IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO.74,799






EX PARTE GEORGE WILLIAM RIECK, JR., Applicant






ON APPLICATION FOR WRIT OF HABEAS CORPUS

FROM VICTORIA COUNTY






Keller, P.J., delivered the opinion for the unanimous Court.


O P I N I O N



 We filed and set this application for writ of habeas corpus to determine whether the "Forfeiture of
Good Conduct Time: Frivolous Lawsuits" statute applies to Article 11.07 (1) habeas corpus proceedings. 
On our own motion, we asked the parties to brief the issue. We hold that the statute does not apply in the
habeas context.

I. BACKGROUND


 In 1992, applicant pled nolo contendere to indecency with a child and was sentenced to sixteen
years imprisonment and a $750 fine. Since that conviction, applicant has filed twenty-one applications for
writ of habeas corpus, many of which have been dismissed pursuant to Article 11.07 §4. (2) In this
application, he complains about the time credit consequences of his 1999 parole revocation. These claims
are identical to those raised in his sixteenth application. 

II. ANALYSIS


A. General principles


 In construing a statute, we confine our analysis to the plain meaning of the text, unless the language
is ambiguous or the plain meaning leads to absurd results that the Legislature could not have possibly
intended. (3) When we are called upon to go beyond the plain meaning of the statutory text, we may consider
various extratextual factors. (4) Those factors include but are not necessarily limited to: (1) the object sought
to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4)
common law or former statutory provisions, including laws on the same or similar subjects, (5) the
consequences of a particular construction, (6) administrative construction of the statute, and (7) the title
(caption), preamble, and emergency provision. (5)

B. The statute


 TEX GOVT CODE §498.0045(a) provides:

In this section, "final order" means a certified copy of a final order of a state or federal
court that dismisses as frivolous or malicious a lawsuit brought by an inmate while the
inmate was in the custody of the department or confined in county jail awaiting transfer to
the department following conviction of a felony or revocation of community supervision,
parole, or mandatory supervision.

 

On receipt of a final order, the Texas Department of Criminal Justice is to forfeit certain designated periods
of time, which may not later be restored. (6)

 We have not had occasion to analyze the statute before now, but we have referred to its language. 
In dicta in Jones v. State, we said: "Writ applications dismissed under section 4 may, in appropriate cases,
be dismissed with a final order declaring the lawsuit frivolous." (7) But we did not invoke the statute's
provisions or even cite to it in Jones, let alone analyze it. Faced now with the potential applicability of the
statute to habeas proceedings, we conduct an analysis.

C. Plain or ambiguous?


 Does an Article 11.07 habeas corpus proceeding constitute a "lawsuit" for the purpose of the
statute? Words should be defined in accordance with any technical or particular meaning acquired by
legislative definition or otherwise. (8) In determining the plain meaning of a word, we initially look to
dictionary definitions. (9) Since "lawsuit" is a legal term, we shall look to definitions from legal dictionaries. 

 Merriam-Webster's Dictionary of Law defines "lawsuit" as "an action brought in a court for the
purpose of seeking relief from or remedy for an alleged wrong." (10) This definition would appear to include
postconviction habeas proceedings. (11) But definitions from other legal dictionaries are not as favorable to
that proposition.

 Black's Law Dictionary defines "lawsuit" as a "suit" and defines "suit" as: "Any proceeding by a
party or parties against another in a court of law." (12) Whether a habeas proceeding is a proceeding by one
party against another is questionable. Habeas proceedings in Texas are styled "ex parte," which means,
"Done or made at the instance and for the benefit of one party only, and without notice to, or argument
by, any person adversely interested." (13) On the other hand, as a matter of statute and practical fact, an
Article 11.07 habeas corpus proceeding does involve a party adverse to the applicant - the State - which,
contrary to what occurs in traditional ex parte proceedings, is given notice and the opportunity to
respond. (14)

 Some legal dictionary definitions cast doubt on the propriety of using the term "lawsuit" to describe
criminal proceedings. Citing the Michigan Supreme Court case of Patterson v. Standard Accident Ins.
Co., (15) Ballentine's Law Dictionary defines "lawsuit" as: "An action or proceeding in a civil court in law or
equity, but not a criminal prosecution." (16) And Barron's Law Dictionary, citing Kohl v. United States (17)
and Patterson, equates "lawsuit" with "suit," and defines the term more expansively, saying that it could
be used to describe criminal proceedings but is more appropriate for civil proceedings. (18)

 In Patterson, an insured involved in an automobile accident was prosecuted for manslaughter. (19) 
The insurance policy provided that the insurance company would defend the insured in any "suits" brought
against him on account of the accident. (20) The insured claimed that "suits" included criminal prosecutions,
while the insurance company interpreted the term "suits" to refer only to civil actions. (21) Ruling in favor of
the insurance company, the Michigan Supreme Court held that the word "suits" in the insurance policy did
not extend to criminal prosecutions. (22) The Michigan court acknowledged that the word "suit" enjoyed
broad usage, including being applied to a criminal prosecution in some contexts, but that application to
criminal proceedings was disfavored. (23) The court also looked at the specific context before it and
concluded that its interpretation of "suits" as meaning "civil suits" conformed to the purpose of automobile
insurance contracts. (24) Two cases involving a corporation's right to prosecute and defend "suits" after
dissolution have relied on or cited Patterson to determine that "suits" applies only to civil proceedings. (25) 

 The construction of the word "suit" in these cases and others, (26) and the dictionary definitions of
"suit" and "lawsuit" derived from the cases, are attempts to determine the meaning of a word by looking
at its context and common usage - tools of construction that are well recognized in Texas. (27) An
examination of our own prior cases shows that the word "lawsuit" has been used to refer to a criminal
prosecution in connection with a wide variety of issues. (28) Our use of the word "lawsuit" to refer generally
to both civil and criminal actions was evident in Taylor, where we held that it was not permissible for
attorneys representing the same party to take conflicting positions: "The District Attorney does not point
to any other court that is called on in any case to entertain conflicting decisions made by two attorneys
representing one party to a lawsuit." (29) Moreover, participants in criminal trials often refer to the criminal
prosecution as a "lawsuit." (30) In numerous cases we have referred to a civil action as a "civil lawsuit" (31)
while we have found just a few cases referring to a "criminal lawsuit," or a synonym thereof. (32) Although
this may indicate that the use of the word "lawsuit" is much more common in connection with civil
proceedings, it nevertheless supports the proposition that the word "lawsuit" can sometimes broadly refer
to both civil and criminal actions. 

 However, while "lawsuit" is used in its broad meaning in our cases, statutory references to the word
almost uniformly involve the more narrow use as a description of civil actions. (33) Excluding the statute under
consideration in this case and related statutes, (34) the only possible exceptions appear to be the statute
describing the barratry offense in the Penal Code and a Water Code statute that may refer to criminal
offenses committed under that code. (35)

 The United States Supreme Court has, at times, used the word "suit" or "lawsuit" broadly. In
Kohl, the Supreme Court defined "suit" in relation to the expansive federal jurisdiction created by the
Judiciary Act of 1789. (36) And in the context of the federal statute authorizing the filing of in forma pauperis
actions, the Supreme Court has referred to the word "lawsuit" in connection with both criminal and civil
actions. (37)

 Regardless of how one resolves the meaning of the word "lawsuit," whether habeas proceedings
in particular can be properly characterized as lawsuits is unclear. In addition to this Court's own casual
reference to a habeas corpus proceeding as a "lawsuit," (38) there is the pronouncement by the United States
Supreme Court in Kohl that expressly includes habeas corpus within its own list of proceedings that
constitute "suits." (39) However, implicitly utilizing the Black's Law Dictionary definition of "suit" as an action
by one party against another, the Texas Attorney General has concluded that "there is no consensus on
whether habeas corpus is a 'suit' or 'action.'" (40) In connection with this conclusion, the Attorney General
cited the Texas Supreme Court case of Ex parte Ramzy and several out-of-state cases for the proposition
that habeas corpus is not a "suit" but instead a "summary remedy." (41) 

 To the extent that the criminal nature of a proceeding might be a stumbling block to characterizing
the proceeding as a lawsuit, it should be observed that most jurisdictions have traditionally regarded habeas
corpus as a civil remedy, even when the relief sought is from confinement in the criminal justice system. (42) 
Yet courts have struggled with how to characterize habeas proceedings and have sometimes characterized
them as "neither civil nor criminal but rather sui generis" or "an exercise of special constitutional and
statutory jurisdiction." (43) The United States Supreme Court has conceded that habeas corpus proceedings
are characterized as "civil" but called that label "gross and inexact," stating that, "Essentially, the proceeding
is unique." (44) And while a habeas proceeding is considered in Texas to be separate from the criminal
prosecution - being a collateral, rather than direct, attack on the judgment of conviction (45) - Texas has gone
further in eschewing the civil label for habeas proceedings arising from criminal prosecutions or convictions. 
Such proceedings are categorized as "criminal" for jurisdictional purposes, and the Texas Rules of Civil
Procedure do not ordinarily apply. (46) Article 11.07 habeas proceedings are categorized as criminal
proceedings by statute. (47) 

 At this point, it is apparent that the word "lawsuit" is ambiguous. While the word may embrace
habeas corpus proceedings, we cannot conclude from the statute itself that it does.

D. Extratextual factors


 We turn, then, to extratextual factors. We begin with the legislative history, which is fairly
extensive. On the House floor, Representative Allen Hightower, the sponsor of the bill, H.B. 1343, began
by stating, "What this bill does is it tracks a new federal system called the 'Spears' method." (48) He
continued by summarizing the various aspects of the bill, including the good-time forfeiture provision. (49) 

 Representative Hightower's "Spears" comment appears to be a reference to the Fifth Circuit's
opinion in Spears v. McCotter. (50) In that case, an inmate filed in federal district court a pro se, in forma
pauperis §1983 civil-rights complaint against the Texas Department of Corrections for subjecting him to
cruel and unusual punishment by requiring him to perform work beyond his physical capacity and by not
affording him proper medical attention. (51) Although both parties demanded a jury trial, the case was
referred to a magistrate for an evidentiary hearing without a jury. (52) The magistrate recommended that the
case be dismissed, and the district court adopted the magistrate's recommendation. (53) 

 The Fifth Circuit held that referring the petition to a magistrate was proper and that the magistrate
could determine, without a jury trial, whether the complaint was frivolous and should be dismissed. (54) The
Fifth Circuit further found that, pursuant to 28 U.S.C. §1915(d), a frivolous in forma pauperis action
could be dismissed without a jury determination, and it recommended the use of such a procedure to
winnow out the growing number of inmate cases. (55) The United States Supreme Court later indicated that
a fast-track method of dismissing frivolous in forma pauperis actions was desirable because of the lack
of economic disincentive to filing such actions. (56) The Supreme Court also recognized that inmate
complaints could be filed "as a means of gaining a 'short sabbatical in the nearest federal courthouse.'" (57)

 A reading of subsections (a) and (d) of §1915 together (1979 version) (58) makes clear that the ability
to dismiss frivolous actions was not limited to civil complaints, but applied to both "civil" and "criminal"
proceedings. (59) However, that statute was not limited to "suits" or "lawsuits" but broadly encompassed "any
suit, action or proceeding, civil or criminal, or appeal therein." (60) Additionally, the statute was not
specifically directed at inmate lawsuits. (61) Spears (and Neitzke) addressed the statute in the context of the
problem of inmate civil litigation. (62) So Representative Hightower's reference to Spears does not in itself
provide any clear guidance about whether the forfeiture statute was intended to apply beyond the realm
of civil litigation, although the policy reasons articulated in the federal cases may be relevant to our inquiry. 
 

 The House Committee report on H.B. 1343 began by listing seven examples of frivolous lawsuits,
all of which were civil actions, initiated by an inmate-plaintiff, not habeas proceedings. (63) The report then
stated: "These cases, and the hundreds like them, take time away from the business and resources of the
Department of Criminal Justice, and from the resources of the Attorney General's office." (64) The Attorney
General is charged with defending the State, its officers, and its institutions in civil actions (65) but is not
ordinarily assigned the responsibility to respond to Article 11.07 postconviction applications for writ of
habeas corpus in Texas state courts - a task largely performed by district attorneys' offices. (66) The House
Committee report explained that 659 inmate cases were opened by the Attorney General's office in 1993
and another 994 cases were opened in 1994. (67) The report further stated that the sixteen most prolific
inmate litigators had filed 498 cases. (68) From the context of the report, it is clear that these were all civil
cases. (69) The report also explained that the bill contained a number of provisions to combat inmate lawsuits,
including a new chapter in the Civil Practice and Remedies Code to enable the efficient disposition of
frivolous civil actions, a monetary disincentive to filing such actions, and the statute in question, which
permits the forfeiture of good-conduct time for filing frivolous lawsuits. (70) The Senate Committee report
briefly repeated some of the statements made in the House report. (71) 

 The House and Senate committee hearings are replete with references to civil actions, the need to
curb those actions, and the bill's design to do so. (72) In the House hearing, Representative Hightower
pointed out that "many times these frivolous lawsuits are filed just for the purpose to get a day away from
the unit," (73) an event that does not ordinarily occur in habeas proceedings. (74) An unidentified representative
asked Ann Kraatz, of the Attorney General's Office, why Texas Rule of Civil Procedure 13, "which
prohibits frivolous lawsuits and provides sanctions" could not be used to combat frivolous inmate litigation. (75) 
Her answer, and the remarks of other witnesses, indicated that Rule 13 contemplates service of process, (76)
which, under §14.003, could be avoided, (77) and that indigent inmates could not be deterred by monetary
sanctions. (78) 

 Not one person in the hearings ever indicated that the statute might apply to applications for writ
of habeas corpus, or to any criminal proceedings. (79) In fact, there is one passage to the contrary. Maxine
Barnette, representing Anderson County, referred briefly to the "abuse of the writ doctrine," testifying that,
"on the criminal side of the law, the appeals court has limited what they call abuse of the writ." (80) She
remarked that "the time has come to address" the issue "in the civil area, too." (81) Moreover, the
provision at issue in this case was just one aspect H.B. 1343's effort to curb frivolous lawsuits. The bill
created several other statutes, found in the Civil Practice and Remedies Code, that illustrate the bill's
exclusive focus on civil actions. Although placement in the Civil Practice and Remedies Code does not
automatically preclude application of a given statute to criminal or habeas proceedings, (82) the specific
characteristics of these particular statutes make their exclusively "civil" focus clear. 

 First, the bill added a venue provision regarding inmate litigation to the Civil Practices and
Remedies Code but added no comparable provision to the Code of Criminal Procedure. (83) This provision,
placed in a chapter that assigns venue to various civil proceedings, (84) referred to "an action that accrued
while the plaintiff was housed in a Texas prison facility." (85) A habeas claim is not ordinarily thought to
"accrue" while the inmate is housed in prison because habeas claims challenge the fact or duration of
confinement (or restraint) rather than the conditions of confinement. (86) Moreover, the term "plaintiff" is
foreign to Article 11.07 jurisprudence, as the proper term for an inmate applying for relief under the statute
has been either "petitioner" (87) or "applicant." (88)

 Second, the bill created Chapter 14 of the Civil Practices and Remedies Code to provide fast-track
procedures for handling and dismissing frivolous claims, and which outlines standards for determining
whether a lawsuit is frivolous. (89) No criminal counterpart was enacted at that time or otherwise exists. 
Enacting guidelines for civil cases but not for criminal habeas actions is further evidence that the Legislature
did not intend the forfeiture provision to apply in the criminal habeas context. Yet another indication that
Chapter 14 was meant to apply only to civil actions is suggested by §14.014, which prohibits modification
of the Chapter by Texas Supreme Court rule. 

 Third, §14.002, entitled "Scope of Chapter," provides: "This chapter applies only to a suit brought
by an inmate in a district, county, justice of the peace, or small claims court in which an affidavit or
unsworn declaration of inability to pay costs is filed by the inmate." (90) The significance of this statement
is that Chapter 14's remedies involving the screening and dismissal of frivolous lawsuits apply only to
lawsuits in which the costs have been waived due to indigence. In the civil system, a plaintiff is ordinarily
required to pay filing and service fees before a lawsuit will be docketed by the court clerk. (91) Those fees
are waived if the plaintiff files an affidavit (or unsworn declaration) of inability to pay the costs. (92) As
discussed earlier, payment of fees is a financial disincentive to filing a frivolous lawsuit. As with the federal
statute discussed earlier, the idea behind §14.002 is that inmates who can file lawsuits for free have no such
disincentive and must, therefore, be subject to more rigorous procedures designed to screen out and
dispose of frivolous actions. 

 That type of reasoning does not apply well in the state habeas context. Currently, the Code of
Criminal Procedure prohibits the court clerk from requiring a filing fee for habeas corpus applications. (93) 
That provision did not exist in 1995, when H.B. 1343 was enacted, and the bill analysis for the 1999 filing
fee prohibition suggests that it was enacted because filing fees could be exacted from habeas applicants. (94) 
Nevertheless, we are unaware of any prevailing practice of district clerks in 1995 to require filing fees for
postconviction habeas corpus actions, and a 1994 Attorney General opinion stated that, while the district
clerk was authorized under a catch-all provision to charge a "reasonable fee," (95) failure to pay a fee - or
file an affidavit of inability to pay - was not a ground for refusing to file a habeas application or for refusing
to issue process under that application. (96) So the filing fee (or affidavit of inability to pay) did not serve the
gatekeeping function in habeas cases that it serves in civil cases. 

 Aside from the legislative history, there are other extratextual factors, but these carry little weight. 
We recognize that in 1996 the Mississippi Legislature passed a statute that is almost identical to the Texas
good-time forfeiture provision (97)
 and that the Mississippi Supreme Court has upheld the application of that
statute to habeas corpus actions. (98) But the focus of the Mississippi Supreme Court was solely on whether
the applicant's claim was frivolous and whether the forfeiture of good time was constitutional; that court
did not address why the statute was applicable to habeas corpus proceedings. (99) The Texas statute was
passed before the Mississippi statute, and of course, before any Mississippi Supreme Court decision
construing the statute; so, the Texas Legislature could not have been charged with notice of the parallel
provision or of the Mississippi Supreme Court's implied construction of that provision. While the
Mississippi Supreme Court's opinion is something to be considered, its decision cannot weigh heavily in
our analysis in the face of overwhelming legislative history pointing to a civil-only focus for the Texas
forfeiture provision.

 Finally, we observe that the evident purpose of the forfeiture statute - to reduce frivolous litigation
- would be served by the statute's application to habeas proceedings. Every year, this Court is inundated
with post-conviction habeas filings. In spite of the enactment of the abuse of the writ provisions of Article
11.07 §4, application numbers have continued to climb. In fiscal year 1995, 3,996 applications were filed
in this Court; in fiscal year 2003, that number increased to 6,660. (100) 

 Yet, if the Legislature had intended for this statute to be used to reduce frivolous habeas
applications, there could have been at least some mention of it in the legislative history. The legislative
history is replete with the need to combat the tide of frivolous civil litigation and the statute's purpose in
achieving that goal. If the Legislature had intended to serve the parallel goal of reducing frivolous habeas
corpus applications, it would have been easy for someone, somewhere in the process, to have said so. 
Instead, the only mention of habeas proceedings is the suggestion that the issue of frivolous habeas actions
had been addressed by §4 and that the gap that remained to be filled was with regard to civil cases.

 However useful this statute could be if applied to habeas proceedings, (101) we conclude that the
Legislature did not contemplate its use in that context. We hold that §498.0045 does not apply to Article
11.07 habeas corpus proceedings.

 Applicant's present application for writ of habeas corpus is barred as a subsequent application
under Article 11.07 §4. This application is dismissed. 

 KELLER, Presiding Judge

Date delivered: September 15, 2004

Publish



1. All references to Article 11.07 are to the Code of Criminal Procedure.
2. Art. 11.07 §4(a) bars consideration of subsequent applications unless certain requirements are
met.
3. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).
4. Id.
5. TEX. GOV'T CODE §311.023; Brown v. State, 943 S.W.2d 35, 38 (Tex. Crim. App.
1997).
6. TEX. GOVT CODE §498.0045(b).
7. 97 S.W.3d 586, 589 (Tex. Crim. App. 2003).
8. TEX. GOV'T CODE § 311.011(b). 
9. Lane v. State, 933 S.W.2d 504, 515, 515 n. 12 (Tex. Crim. App. 1996).
10. MERRIAM-WEBSTER'S DICTIONARY OF LAW (1996).
11. Art. 11.01 ("The writ of habeas corpus is the remedy to be used when any person is
restrained in his liberty"); Art. 11.07 §1 ("in which the applicant seeks relief from a felony judgment
imposing a penalty other than death").
12. BLACK'S LAW DICTIONARY 895 & 1448 (7th ed. 1999). 
13. BLACK'S LAW DICTIONARY 597 (7th ed. 1999)(adjective definition)(emphasis
added); see also, Ex parte Ramzy, 424 S.W.2d 220, 223 (Tex. 1968)("A procedure by habeas
corpus to be relieved of imprisonment for contempt can in no legal sense be regarded as a suit or
controversy between private parties. In such a proceeding the petition for a writ of habeas corpus is for
the relief of the prisoner and the prisoner only").
14. See Art. 11.07 §3(b)("The clerk . . . shall . . . forward a copy of the application . . . to the
attorney representing the state in that court, who shall answer the application not later than the 15th day
after the date the copy of the application is received").
15. 178 Mich. 288, 144 N.W. 491 (1913).
16. BALLENTINE'S LAW DICTIONARY 715 (3rd ed. 1969).
17. 91 U.S. 367 (1876).
18. BARRON'S LAW DICTIONARY 264 & 463 (2nd ed. 1984).
19. 144 N.W. at 491. 
20. Id. at 492.
21. Id. at 491-492.
22. Id. at 492-493.
23. Id. at 492.
24. Id. at 493.
25. United States v. Safeway Stores, Inc., 140 F.2d 834, 838 (10th Cir. 1944); United
States v. P.F. Coller & Son Corp., 208 F.2d 936, 938-939 (7th Cir. 1953).
26. Commonwealth v. Moore, 143 Mass. 136, 9 N.E. 25, 26 (1886)("suit" includes criminal
proceedings for purposes of statute qualifying jurors); Kelliher v. People, 71 Colo. 202, 205 P. 274-275 (1922)( "suit" includes criminal proceedings for purposes of statute relating to the duties of sheriffs
and coroners).
27. See TEX. GOVT CODE §311.011(a); Jones v. State, 979 S.W.2d 652, 657 (Tex. Crim.
App. 1998).
28. See, e.g., Aldrich v. State, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003(guilty pleas); Ex
Parte Taylor, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002)(collateral estoppel); Ex Parte Taylor,
36 S.W.3d 883, 887 (Tex. Crim. App. 2001)(proceedings before the Court of Criminal Appeals).
29. Taylor, 36 S.W.3d at 887.
30. See, e.g., Miller v. State, 36 S.W.3d 503, 506 (Tex. Crim. App. 2001)(trial court);
Rhoades v. State, 934 S.W.2d 113, 125 (Tex. Crim. App. 1996)(defense counsel); Fuentes v. State,
664 S.W.2d 333, 337 (Tex. Crim. App. 1984)(prosecutor).
31. See, e.g., Kellar v. State, 108 S.W.3d 311, 312 (Tex. Crim. App. 2003); Soliz v. State,
97 S.W.3d 137, 138 (Tex. Crim. App. 2003); Thompson v. State, 93 S.W.3d 16, 21 (Tex. Crim.
App. 2001), cert. denied, 124 S. Ct. 250 (2003).
32. Gordon v. State, 801 S.W.2d 899, 915 n. 16 (Tex. Crim. App. 1990)("criminal lawsuit");
Thomas v. Crow, 862 S.W.2d 719, 722 (Tex. App.-Tyler 1993, no writ)(same); Hunt v. State, 160
Tex. Crim. 358, 271 S.W.2d 290, 292-293 (1954)("misdemeanor lawsuit").
33. TEX. AGRIC. CODE §§74.1041(d), 74.129; TEX. BUS. & COM. CODE §15.05(h);
TEX. CIV. PRAC. & REM. CODE §§8.02, 15.002(a), 15.003(a), 31.007(a), 33.004(j),
103.105(a)(1), 104.004(b), 109.0015(b); TEX. EDUC. CODE §§51.967, 61.952(3)(A), 132.102(c)
& (d); TEX. FAM. CODE §§8.057(b), 9.001(b), 9.102(b), 9.201(b), 156.004, 157.062(d)(2); TEX.
FIN. CODE §§126.155(a), 392.301(b)(2), TEX. GOVT CODE §§51.943(c) & (d), 495.008(b)(5),
659.151(e), 1501.151; TEX. HEALTH & SAF. CODE §§242.252(b) & (e), 361.405(a)(2); TEX.
HUM. RES. CODE §32.060(h); TEX. INS. CODE §§38.154(a)(3)(B), 38.156(3)(A)(I), 2602.260;
TEX. LABOR CODE §402.084(b)(7);TEX. LOC. GOVT CODE §§41.003(b)(4), 51.003(a)(2),
283.057(a), 335.071(h), 351.016(b)(4)-(6); TEX. NAT. RES. CODE §61.025(a); TEX. OCC.
CODE §§160.052(a)(2), 160.053(a), 164.201, 301.408(b)(2) & (d), 569.001(b), 1958.304; TEX.
PROP. CODE §§5.008(b)(Question 5), 5.023(b), 92.003(a), 92.056(f)(2), 92.301(b)(4), 94.011(a),
94.156(f)(2), 207.003(b)(9), 209.008(e), 221.032(b)(12); TEX. TAX CODE §§5.05(d), 42.09(c),
111.207(a)(1); TEX. WATER CODE §§36.124(a)(2), 49.235(a)(2), TEX. INS., Arts. 9.48 §19(a),
21.21-2 §3(d), 21.28 §4(f) & (h); TEX. PROB. CODE §§146(e)(2), 367(c)(7)(a), 663, 681(4),
741(a), 782(b), 847(l), 852, 887(a) & (e). 
34. See TEX. CODE CRIM. PROC. Arts. 42.032 §5(2), 42.09 §9.
35. TEX. PEN. CODE §38.12(d)(2)(D)("lawsuit of any kind"); TEX. WATER CODE
§7.051(a)(2).
36. 91 U.S. at 375-376.
37. Neitzke v. Williams, 490 U.S. 319, 324 (1989). 
38. Ex parte Hoang, 872 S.W.2d 694, 699 (Tex. Crim. App. 1993), cert. denied, 513 U.S.
863 (1994).
39. Kohl, 91 U.S. at 375.
40. Atty Gen. op. DM-295, 1994 Tex. AG LEXIS 469, *19 (June, 16, 1994).
41. Atty Gen. op. DM-295 at *20-21, *21 n. 13 (citing Ramzy; Ex parte Tail, 14 N.W.2d
840, 841 (Neb. 1944); Florida ex rel. Deeb v. Fabisinski, 152 So. 207, 209 (Fla. 1933); New York
ex rel. Hauptmann v. Hanley, 274 N.Y.S. 813, 815 (Sup. Ct. 1934), affirmed, New York ex rel.
Hauptmann v. Hanley, 274 N.Y.S. 824 (App. Div. 1934)).
42. Harbison v. McMurray, 138 Tex. 192, 158 S.W.2d 284, 287 (1942).
43. Atty Gen. op. DM-295 at *22 (citing In rey Moy Chee Kee, 33 F. 377, 379 (C.C.N.D.
Cal. 1887); McFarland v. Johnson, 27 Tex. 105, 109 (1863)).
44. Harris v. Nelson, 394 U.S. 286, 293-294 (1969); see also Atty Gen. op. DM-295 at *24.
45. See, e.g., Ex parte Tuley, 109 S.W.3d 388, 390 (Tex. Crim. App. 2002).
46. Ex parte Davis, 542 S.W.2d 192, 198 (Tex. Crim. App. 1976); See also Ex parte
Donaldson, 86 S.W.3d 231, 233 (Tex. Crim. App. 2002)(Rules of Civil Procedure do not apply to
criminal cases); but see Arnold v. State, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (applying
TEX. R. CIV. P. 18(a) to criminal cases).
47. Art. 11.07 §5.
48. House floor debates, second reading of H.B. 1343, April 5, 1995.
49. Id.
50. 766 F.2d 179 (5th Cir. 1985).
51. Id. at 180.
52. Id.
53. Id.
54. Id. at 180-181.
55. Id. at 182.
56. Neitzke, 490 U.S. at 324 (quoting from §1915(d)).
57. Id. at 326 (internal quotes omitted; quoting Cruz v. Beto, 405 U.S. 319, 327
(1972)(Rehnquist, J. dissenting)).
58. The statute was subsequently amended in 1996. We address the 1979 version because that
version was in effect at the time the federal cases in question were decided and at the time the Texas
forfeiture provision was enacted. 
59. See §1915(a)(1979). 
60. Id.
61. See §1915, passim (1979).
62. See Spears, 766 F.2d at 180 (§1983 action); Neitzke, 490 U.S. at 320 (§1983 action).
63. Committee Report, Texas House Committee on Corrections, C.S.H.B. 1343, March 21,
1995. Examples cited include claims that prison officials failed to return inmate's fireworks, that an
inmate was served chunky peanut butter instead of smooth, and that eggs were not cooked to inmate's
satisfaction. 
64. Id.
65. TEX. CIV. PRAC. & REM. CODE §§101.103(a), 104.004; TEX. GOVT CODE 
§402.024.
66. Art. 11.07 §3(b)("attorney representing the state in that court").
67. House Committee Report, supra.
68. Id.
69. See id.
70. Id.
71. Amended Committee Report, Texas Senate Committee on Criminal Justice, H.B. 1343,
April 28, 1995. 
72. See the respective committee hearings, supra.
73. Rep. Hightower, House Committee Hearing, tape side A, counter 346-348. 
74. See Art. 11.07 §3(d)("If the convicting court decides that there are controverted previously
unresolved facts...To resolve those issues the court may order affidavits, depositions, interrogatories,
and hearings, as well as using personal recollection").
75. House Committee Hearing, tape side A, counter 615-617.
76. Id.
77. Texas Acts 1995, 74th Leg, ch. 378, §2 (§14.003(a)(2))("A court may dismiss a claim,
either before or after service of process, if the court finds that . . . the claim is frivolous or
malicious")(emphasis added).
78. See Michelle Brinkman, House Committee Hearing, tape side B, counter 144-145
("monetary sanctions mean nothing because they have nothing").
79. See the respective committee hearings, passim.
80. House Committee Hearing, February 28, 1995, side A, counter 704-712.
81. Id.
82. See Ex parte Johnson, 811 S.W.2d 93, 97 (Tex. Crim. App. 1991)(applying TEX. CIV.
PRAC. & REM. CODE, Chapter 132 to criminal habeas proceedings).
83. See Acts 1995, 74th Leg., ch. 378, §1 (creating §15.018); and passim; see also TEX. CIV.
PRAC. & REM. CODE §15.019 (renumbered by Acts 1997, 75th Leg., ch. 165, § 31.01(3), from
§15.018).
84. See TEX. CIV. PRAC. & REM. CODE, Chapter 15.
85. Texas Acts 1995, 74th Leg., ch. 378, §1 (§15.018(a))(emphasis added); see also TEX.
CIV. PRAC. & REM. CODE §15.019(a).
86. Ex parte Paprskar, 573 S.W.2d 525, 527 (Tex. Crim. App. 1978), overruled on other
grounds, Weiner v. Dial, 653 S.W.2d 786, 787 n. 1 (Tex. Crim. App. 1983).
87. TEX. CODE CRIM. PROC. Art. 11.07 §3 (1994).
88. TEX. CODE CRIM. PROC. Art. 11.07 §5 (1995).
89. See Acts 1995, 74th Leg., ch. 378, §2; TEX. CIV. PRAC. & REM. CODE §14.003.
90. Acts 1995, 74th Leg., ch. 378, §2; TEX CIV. PRAC. & REM CODE §14.002 (emphasis
added).
91. TEX. R. CIV. P. 142 (filing fee) & 126 (service of process).
92. TEX. R. CIV. P. 126, 142, 145.
93. TEX. CODE CRIM. PROC. Art. 11.051.
94. Texas Office of House Bill Analysis; 76th Leg., H.B. 149, July 7, 1999. The Bill analysis
stated: "Prior to the 76th Legislature, state law allowed a clerk of a court to require an individual who
filed an application or petition for a writ of habeas corpus to pay a filing fee. H.B. 149 prohibits a clerk
of a court from requiring a person who files an application or petition for a writ of habeas corpus to pay
a filing fee."
95. Atty Gen. op. DM-295, *15 (citing TEX. GOVT CODE §51.319). 
96. Id. at *16-*27 (opining that the filing fee requirements of the Rules of Civil Procedure do not
apply). We note that, once the habeas application is under consideration, the judge trying the habeas
corpus action has discretion to assess costs under TEX. CODE CRIM. PROC., Art. 11.50.
97. See Mississippi Laws 1996, ch. 350, § 1 (Miss. Code §47-5-138(3)(a)), Laws 1998, ch.
402 §1 (Miss. Code §47-138(3)(a)). 

98. Tubwell v. Anderson, 776 So.2d 654, 659 (Miss. 2000); see also Tubwell v. Grant, 760
So.2d 687, 690-691 (Miss. 2000).
99. See Tubwell, 776 So.2d at 659; Tubwell, 760 So.2d at 690-691.
100. ANNUAL REPORT OF THE TEXAS JUDICIAL SYSTEM (1995: p. 101, 2003: p.
100).
101. The application is unquestionably "frivolous," as that term is understood in §14.003.