

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-91,715-01

## IN RE UNIVERSITY OF TEXAS MEDICAL BRANCH–GALVESTON, Relator

## ON MOTION FOR LEAVE TO FILE PETITION FOR A WRIT OF MANDAMUS
## AND PETITION FOR A WRIT OF MANDAMUS
## CAUSE NO. 011545 IN THE 259TH DISTRICT COURT OF JONES COUNTY

SLAUGHTER, J., filed a concurring opinion.

### CONCURRING OPINION

While I agree with the Court's ultimate conclusion that the habeas judge lacked authority to issue the order compelling Relator to conduct brain imaging on the Real-Party-in-Interest, Dillion Compton, I cannot join the Court's opinion. Instead of addressing the merits of the habeas judge's authority to issue the underlying order pursuant to the statutory provisions in Code of Criminal Procedure Article 11.071, the Court bypasses that issue entirely by concluding, once again, that the order was unauthorized simply because it was issued *ex parte*. *See* Maj. Op. at 4. For the same reasons I cited in my previous opinion

addressing this topic, I disagree with the Court that this issue may be resolved solely on the *ex parte* basis. *In re TDCJ*, 668 S.W.3d 375 (Tex. Crim. App. 2023) (Slaughter, J., dissenting). Nevertheless, reaching the question the Court does not reach of the habeas judge's implicit authority under Article 11.071 to issue the order, I agree with Relator that the judge exceeded such authority by ordering Relator to *create* evidence to assist Compton with his pre-application investigation by *compelling* Relator to conduct brain imaging on him. Therefore, I respectfully concur in the Court's judgment.

## I.      Background

In November 2018, the Real-Party-in-Interest, Dillion Compton, was convicted of capital murder and sentenced to death. Several months later, the district court appointed the Office of Capital and Forensic Writs ("OCFW") to represent Compton in his initial Article 11.071 post-conviction habeas proceeding. Upon its appointment, OCFW began investigating the possible factual and legal grounds for relief.

OCFW's investigation revealed potentially important facts about Compton's childhood. Specifically, OCFW learned that Compton's mother had used drugs while she was pregnant with him. OCFW also found that Compton's childhood was plagued by psychological and physical abuse. Based on this history, OCFW suspected that Compton may have suffered from impaired brain function. Because the jury at Compton's capital sentencing hearing did not receive any evidence regarding Compton's potential impaired brain function, OCFW believed possible grounds existed for an ineffective-assistance-of-

counsel claim based on trial counsel's failure to investigate or present such evidence to the jury.

To further its investigation of the possible factual basis for such a claim, OCFW sought to obtain brain imaging on Compton. It contacted the University of Texas Medical Branch–Galveston ("UTMB") to inquire about obtaining a MRI. OCFW requested a cost estimate and notified UTMB that Compton would have to seek court funding to cover the cost of the service. That same day, OCFW moved the habeas court to order UTMB to conduct the MRI and to order the Texas Department of Criminal Justice ("TDCJ") to transport Compton to the appointment. On October 20, 2021, the habeas court granted both motions and entered a single order compelling both actions.

During the week that followed, OCFW and UTMB discussed Compton's potential diagnoses, scheduling for the MRI, and payment details. Following these discussions, OCFW and UTMB agreed to schedule Compton's MRI for November 11, 2021. OCFW then served the habeas court's order on the TDCJ unit where Compton was confined. A few days later, OCFW prepaid UTMB the sum requested for the brain imaging.

On November 5, 2021, the Office of the Attorney General ("OAG") intervened on behalf of TDCJ and UTMB. The OAG moved the habeas court to revoke its order. Initially, the habeas court did so. But on December 3, 2021, following a hearing on the matter, the habeas court denied the OAG's motion and reinstated the original order. In response, the OAG filed the instant mandamus petition, arguing that the habeas judge lacked authority

under Code of Criminal Procedure Article 11.071, Section 3, to issue the order. This Court filed and set the case to address the question of whether a habeas judge has the implicit authority under Article 11.071 to issue pre-application orders in support of a capital habeas applicant's investigation of possible claims.[1]

## II.  Discussion

Notwithstanding the aforementioned statutory-authority question that was the basis for this Court's decision to file and set this case, the Court now grants conditional mandamus relief to Relator on an entirely different basis—that is, that the order in question was issued *ex parte* without notice to the State. *See* Maj. Op. at 4. Under this rationale, the Court declines to reach the merits of whether the habeas judge had implicit authority under Article 11.071 to issue the underlying order. In support of its reasoning, the Court relies on

---

[1] The grounds on which we ordered briefing were:

1. Is a convicting court's authority under Code of Criminal Procedure Article 11.071, Section 3 strictly limited to (i) granting requests for expenses, *see* TEX. CODE CRIM. PROC. art. 11.071, § 3(c), and (ii) ordering reimbursement for expenses, *see id.* § 3(d)?

2. If an inmate secured funding for investigatory medical imaging pursuant to Code of Criminal Procedure Article 11.071, Section 3, would a convicting court have authority to order the Texas Department of Criminal Justice to transport the inmate to a hospital (so that he could receive that imaging) before an Article 11.071 application was filed? If so, what law or set of laws would authorize the convicting court to issue a pre-application transport order of that nature?

3. The court orders at issue in this case arguably command an entity to create evidence that did not exist at the time of the orders. What role, if any, should this Court's opinions in *In re State ex rel. Best*, 616 S.W.3d 594, 600 (Tex. Crim. App. 2021), and *In re Harris*, 491 S.W.3d 332, 336 (Tex. Crim. App. 2016), play in the analysis? Does it matter whether the convicting court's orders were in the nature of "discovery"?

two recent decisions: *In re City of Lubbock*, 666 S.W.3d 546 (Tex. Crim. App. 2023), and *In re TDCJ*, No. WR-91,688-01, 2023 WL 4003792 (Tex. Crim. App. June 14, 2023) (not designated for publication). I dissented from those two decisions, and I continue to disagree with the Court's approach in this case. For reasons I explained at length in my dissent in *In re TDCJ*, the Court errs by applying the general rule that *ex parte* orders are disfavored as a basis for concluding that Relator is *clearly* and *indisputably* entitled to relief here. *See In re TDCJ*, 668 S.W.3d at 387 (Slaughter, J., dissenting); *see also State ex rel. Hill v. Court of Appeals for Fifth District,* 34 S.W.3d 924, 927–28 (Tex. Crim. App. 2001) (for mandamus relief to lie, the established law must demonstrate that entitlement to relief is "clear and indisputable" such that its merits are "beyond dispute") (citations and quotations omitted). But, while I continue to assert that a habeas judge has implicit authority under Article 11.071 to order pre-application *discovery* to facilitate an applicant's investigation of possible claims, I agree in this case that such authority stops short of permitting a judge to order a third party to *create* evidence that does not yet exist. Therefore, I concur in the Court's judgment.

### A. The Court once again errs by relying on a general rule disfavoring *ex parte* orders to grant mandamus relief here.

For all the same reasons I previously cited in my *In re TDCJ* dissent, this case cannot be resolved simply by resorting to the general rule that *ex parte* orders are disfavored. *See In re TDCJ*, 668 S.W.3d at 387–81. At the outset, I again question whether the order here was truly issued *ex parte*. An *ex parte* proceeding is one "relating to, or involving court

action taken or received by *one party without notice to the other*." BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). As was the case in *In re TDCJ*, no Article 11.071 application had yet been filed at the time of the Court's order here. It is thus highly questionable whether the State was a "party" to the habeas proceedings at that pre-filing juncture. The Court's cited rationale for strenuously enforcing the perceived "rule" against *ex parte* proceedings is that such a prohibition is necessary to "preserve judicial impartiality and ensure that all *legally interested parties* are given their full right to be heard under the law." *In re City of Lubbock*, 666 S.W.3d at 558 (emphasis added). But what justifiable legal interest can the State have in knowing, at the pre-filing stage, what factual investigations appointed habeas counsel is pursuing? The State will of course be entitled to all the information it needs to respond to the application at the proper time—after the application has been filed. *See* TEX. CODE CRIM. PROC. art. 11.071, § 6(c) (providing that, once the Article 11.071 application has been filed, the attorney representing the State is entitled to copies of the application and all documents filed in conjunction with it). But until that point in time, there is no adversarial proceeding, and the State is not yet a "party" to the litigation. On this basis alone, I would disagree with the Court's analysis of this issue.

But even assuming *arguendo* that this type of pre-application order should be treated as having been issued *ex parte*, that still would not resolve the issue because the prohibition on *ex parte* proceedings is a general rule that is subject to exceptions. *See In re TDCJ*, 668 S.W.3d at 380 (Slaughter, J., dissenting) (stating that, "[w]hile *ex parte* proceedings are

generally 'disfavored,' ample authority indicates that a trial judge may, in narrow circumstances, have discretion to permit an *ex parte* hearing or communication, even if not 'expressly' authorized, when some overriding interest justifies it," and collecting cases). Ultimately, a judge has discretion in limited circumstances to issue an *ex parte* order when he or she deems it necessary and appropriate in the interests of justice. Because such a determination is inherently discretionary, it is not subject to mandamus. *Id.* at 380 (opining that, "whether such an exception applies to a particular fact pattern is the very type of discretionary determination that is generally not susceptible to mandamus") (citing *In re Allen*, 462 S.W.3d 47, 49–50 (Tex. Crim. App. 2015) ("A ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt.")).

In short, the general rule disfavoring *ex parte* proceedings is once again inadequate to resolve the novel issue presented here. I also note that, as a procedural matter, the decisions upon which the Court now relies to grant conditional mandamus relief, *In re City of Lubbock* and *In re TDCJ*, were both issued after this case was filed and set, and after the parties filed their respective briefs. Needless to say, the parties' arguments in their briefs did not emphasize or focus on the rule disfavoring *ex parte* proceedings as a basis for resolving this case. At the very least, given the circumstances, the Court should permit the parties to submit supplemental briefing on this issue before reflexively applying the rule from *In re Lubbock* and *In re TDCJ* to grant Relator mandamus relief here. For the

foregoing reasons, I cannot join the Court's opinion.

**B.** **The habeas judge lacked authority to compel Relator to *create* evidence to aid in Compton's pre-application investigation.**

Despite my disagreement with the Court's approach to this issue, I ultimately agree with its holding granting conditional mandamus relief to Relator. Addressing the issue of implicit statutory authority that the Court declines to reach here, the order in this case was not, strictly speaking, a discovery order. Instead, it sought to compel Relator to conduct brain imaging on Compton and then turn over the results of that imaging to Compton's habeas counsel. Whatever the outer limits of a habeas judge's implicit discovery authority under Article 11.071 may be, such an order purporting to compel a third party to *create* evidence exceeded that authority. Accordingly, I concur in the Court's judgment.

### 1. Implicit Authority under Article 11.071

As I expressed in my *In re TDCJ* dissent, a habeas judge has implicit authority under Article 11.071 to facilitate an Applicant's investigation of potential claims by ordering traditional discovery. In that case, the applicant had sought and received an order from the habeas judge compelling TDCJ to turn over certain confidential records in its possession to facilitate Applicant's investigation of possible *Brady* and false-evidence claims. I would have upheld the habeas judge's action there as being implicitly authorized, noting that the broad purpose of the capital habeas statute is to "ensure 'that a death row inmate *does* have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute.'" *In re TDCJ*, 668 S.W.3d at 382 (Slaughter,

J., dissenting) (quoting *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002)). This purpose is reflected in the statutory provision mandating that appointed habeas counsel "shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus." TEX. CODE CRIM. PROC. art. 11.071, § 3(b). Thus, given a trial judge's "*implicit* authority to take actions not expressly authorized if they are in furtherance of the statute's jurisdictional purpose," the judge's order requiring TDCJ to provide discovery to Applicant was in furtherance of the statutory mandate that counsel investigate all possible grounds for relief. *In re TDCJ,* 668 S.W.3d at 382 (Slaughter, J., dissenting). After all, if habeas counsel were unable to obtain the confidential, non-publicly available records to conduct his pre-application investigation, then he would be unable to fulfill the statutory mandate that he "investigate expeditiously" the possible factual and legal grounds for relief. *Id.* He would also be unable to meet this Court's pleading standard, which requires the applicant to plead "specific facts" in support of his request for relief. *Id.* Disallowing pre-application discovery sets up a Catch-22 for capital habeas applicants: "They are required to plead specific facts in the application (and cannot amend the application after the statutory filing deadline to supplement with additional claims); but they have no power to compel any third parties to actually comply with their factual investigation that might support [their] claims." *Id.* Thus, to avoid a result that conflicts with the statute's overall purpose and structure, I would have held that the habeas judge's pre-application, nonparty

discovery order did not clearly and indisputably exceed the permissible scope of implicit authority under the statute. *Id.* at 384.

### 2. A judge's implicit discovery authority does not encompass the ability to order the *creation* of evidence.

In spite of the foregoing, the order at issue in this case is not a "discovery" order at all. It purports to compel Relator, a nonparty, to take certain action (conducting brain imaging on Compton) and then provide documentation of that action to Applicant. Whatever the outer limits of a habeas judge's implicit discovery authority under Article 11.071 may be, I conclude that this type of order plainly exceeds the scope of that authority.

This Court has already held, in a related context, that a judge exceeds the scope of his discovery authority when he seeks to compel a party to "create evidence." *In re State ex rel. Best*, 616 S.W.3d 594, 601 (Tex. Crim. App. 2021). In *Best*, the State had charged multiple defendants with various felonies and submitted biological evidence to the Department of Public Safety for DNA testing. *Id.* at 596. The defendants sought to halt the DNA testing, arguing that the samples would be insufficient for the defendants to retest them later. *Id.* at 597. The trial judge agreed with the defendants and ordered the State to record its DNA testing, using both audio and video. *Id.* at 598. In response, the State sought mandamus relief from this Court. *Id.* at 599. This Court agreed with the State, holding that "whatever may be the permissible scope of a trial court's discretion over matters of pre-trial discovery, *it does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist*." *Id.* at 600 (emphasis added). While *Best* involved

a pre-*trial* discovery dispute, the basic premise is applicable in the instant case—judges cannot order parties to create "evidence" that would not otherwise exist pursuant to a general discovery authority. It follows that if a judge cannot utilize his discovery authority to compel a party to create evidence, he cannot compel a third party to do so either.[2]

Further, although habeas corpus proceedings are criminal in nature, *see Ex parte Rieck*, 144 S.W.3d 510, 516 (Tex. Crim. App. 2004), the Texas Rules of Civil Procedure are also instructive with respect to the permissible forms of third-party discovery. The Rules authorize parties to compel three types of discovery from nonparties. *See* TEX. R. CIV. P. 205.1. Those include: (1) oral depositions, (2) written depositions, and (3) requests for production of documents or tangible things. *Id.* Notably absent from the Rules is any mechanism through which a party may compel a nonparty to *create* physical evidence. Rather, the Rules restrict courts to ordering third parties to *produce existing* evidence, whether testimony, documents, or other tangible things. *See In re Daimler Trucks North America, LLC*, 551 S.W.3d 833, 842 (Tex. App.—San Antonio 2018, no pet.) (quoting *In re Guzman*, 19 S.W.3d 522, 525 (Tex. App.—Corpus Christi 2000, orig. proceeding) ("The rules do not permit the trial court to force a party to create documents which do not exist,

---

[2] I, of course, acknowledge that a trial judge has authority to take other types of actions, such as ordering a competency evaluation or drug testing of a defendant, that are not for purposes of "discovery" but do result in new evidence or documentation being generated. Those actions are pursuant to some other source of statutory authority and do not derive from an implicit authority to order discovery. My analysis above is accordingly limited to an assessment of a habeas judge's implicit authority, under Article 11.071, to enter pre-application discovery orders to aid in an Applicant's development of claims.

solely to comply with a request for production.")).[3] While I recognize that the Civil Rules do not apply directly in this case, they nevertheless support the broader notion that "discovery," in the traditional sense, does not encompass the creation of new evidence.

Because the habeas judge here ordered Relator to *create* the brain image, rather than produce an existing one, the judge clearly exceeded the scope of his implicit authority under Article 11.071 to order discovery to facilitate habeas counsel's investigation of potential claims. This situation is therefore distinguishable from the issue that was present in *In re TDCJ*, where the Applicant was seeking access to documents already in existence such that the court's order there fell within the scope of traditional discovery.

As a practical observation, however, I note that a capital habeas applicant seeking to have this type of testing done is not without recourse. For example, although the habeas court cannot *compel* UTMB to conduct the brain imaging, there is nothing to prevent a private entity from agreeing to conduct brain imaging on Compton for a fee. The record here clearly reflects that the habeas judge was willing to appropriate funds to cover the cost of obtaining the MRI, pursuant to the judge's express statutory authority under Article 11.071, Section 3. *See* TEX. CODE CRIM. PROC. ART. 11.071, § 3(b), (c), (d) (providing that

---

[3] Such a limitation also exists under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 34 (discovery rule referring to requests to "produce and permit the requesting party or its representative to inspect, copy, test, or sample [ ] items *in the responding party's possession, custody, or control*") (emphasis added); *Payless Shoesource Worldwide, Inc. v. Target Corp.*, Civ. Action No. 05-4023, 2008 WL 973118, at *4 (D. Kan. Apr. 8, 2008) (explaining that "[Rule] 34 does not require a party to create responsive documents if they do not exist in the first instance" and that "the Court cannot compel a party to produce documents that do not exist").

habeas counsel may submit requests for the prepayment and reimbursement of expenses related to the investigation of the factual and legal grounds for relief, and further providing that the habeas court "shall" grant such requests so long as they are reasonable). So, the only problem with the judge's current order is that it *compels* Relator to conduct the brain imaging, which amounts to requiring a third party to create evidence. For the reasons explained above, this aspect of the court's order was impermissible. But the issue may be remedied by simply relying on the provisions in Article 11.071, Section 3, governing pre-payment of expenses, to authorize and order Compton to arrange for his own private testing. Under those circumstances, habeas counsel would still be able to "investigate expeditiously" the factual basis for the underlying claim, without needing to resort to a court order compelling a third party to conduct the testing.

In sum, given the weight of the authority prohibiting a judge from compelling the creation of evidence pursuant to a general discovery power, I conclude that the habeas judge in this case clearly lacked the authority to compel UTMB to create brain scans of Compton. As such, I would grant Relator's mandamus petition on this basis.[4]

## III. Conclusion

While I disagree with the Court that this case can be resolved solely by relying on

---

[4] Given this analysis, I do not address the validity of the trial judge's transport order. It seems to me, however, that *if* the order for Compton to receive an MRI scan were valid, then the transport order would also necessarily be a valid order in furtherance of that action. Because I have agreed with Relator that the order purporting to compel the MRI testing was invalid, I need not definitively resolve the validity of the transport order here.

the principle that *ex parte* orders are disfavored, and while I continue to believe that a habeas judge has implicit authority to order pre-application discovery under Article 11.071, I nevertheless agree that the habeas judge clearly lacked authority to compel UTMB to create evidence in the form of brain imaging on Compton. As such, I concur in the Court's judgment.

Filed: October 18, 2023

Publish