In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00071-CR**
_____

**LESTER GUY BURNEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-02-01762-CR**
_____

**MEMORANDUM OPINION**

Appellant Lester Guy Burney appeals his conviction for driving while intoxicated which was enhanced to a third-degree felony by two prior DWI convictions. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2). Burney filed a written motion to suppress the initial traffic stop, arguing that the State Trooper lacked probable cause to initiate the stop. The trial court found that Burney's detention was supported by reasonable suspicion, and the trial court denied Burney's motion to suppress. In two issues, Burney argues that the trial court erred in denying

1

Burney's motion to suppress because the warrantless traffic stop was unconstitutional, and the Trooper lacked reasonable suspicion to stop Burney. We affirm the trial court's judgment.

Background

Trooper Silvia with the Texas Department of Transportation testified at trial that on February 2, 2021, at approximately 9:45 p.m., he was on patrol driving south on Fostoria Road in Montgomery County, and Burney, who was driving north on the same road, twice momentarily "flashed" his high beams or "brights" at Silvia's oncoming patrol car. According to Trooper Silvia, Burney's flashing of his vehicle's high beams obscured Silvia's vision and "it was bright." Trooper Silvia explained that Burney's flashing of his vehicle's high beams was dangerous because the road has "really no shoulder[,]" has heavy foot and bicycle traffic, and if a driver is blinded by high beams, they could accidentally hit a pedestrian or bicyclist. Trooper Silvia testified that flashing high beams at another vehicle could also cause a road-rage incident. According to Trooper Silvia, Burney's flashing of his high beams constituted a Transportation Code violation, so Trooper Silvia turned his patrol car around to initiate a traffic stop and to give Burney a warning and to inform Burney of the dangers of flashing high beams. During Trooper Silvia's testimony, Burney requested a hearing on his motion to suppress the traffic stop. Defense counsel stated that although a motion to suppress had already been filed, he had "drafted a specific

2

one with caselaw regarding this issue that we haven't filed yet," and defense counsel provided copies of the new pleading to the State and the trial court.

The trial court then held a suppression hearing, and Burney argued that the traffic stop and everything following the alleged illegal stop should be suppressed because (1) under *Chubb v. State*, it is not a violation of the Transportation Code to flash your brights; (2) a person may flash their "brights" as a response to another vehicle's high beams that are flashing in the person's eyes; and (3) a driver's right to flash their brights is protected speech under the First Amendment of the United States Constitution.[1] At the hearing outside the jury's presence, Trooper Silvia then testified that it is a violation of section 547.333 of the Texas Transportation Code for a driver to flash their vehicle's high beams within 500 feet of an oncoming vehicle even if the person is signaling the oncoming driver that their high beams are on, and Silvia explained that he usually tries not to ticket a driver for flashing their vehicle's high beams and usually gives them a warning instead. According to Trooper Silvia, he routinely measures distance in his crash investigations, and based on his training and experience, Burney's vehicle was "actually quite close" and within 100 feet of Trooper Silvia's patrol car when Burney flashed his high beams. The trial court denied the motion to suppress, and the trial continued. We have not

---

[1] Two days after the suppression hearing, Burney filed his Brief in Support of Motion to Suppress Traffic Stop, wherein he made the arguments he made orally at the hearing.

included a discussion of the evidence and additional testimony because it is unnecessary to a resolution of the issue on appeal. *See* Tex. R. App. P. 47.1.

At the conclusion of the trial, the jury found Burney guilty as charged in the indictment. Burney pleaded "not true" to the enhancements alleged in the indictment, and then elected to have the trial court assess punishment. The trial court found the enhancement allegations "true," and the trial court sentenced Burney to forty years of confinement. Burney filed a motion for new trial, which was overruled by operation of law.

The trial court entered Findings of Fact and Conclusions of Law with respect to the ruling on the motion to suppress. The trial court's findings of fact included the following:

> [] On February 2, 2021, around the time of his encounter with the defendant, Lester Guy Burney, Silvia left another unrelated traffic stop near Fostoria Road.
>
> [] At approximately 9:45 in the evening, Silvia drove southbound on Fostoria Road. There was not much traffic on the road. As he drove southbound, Silvia observed a car, later found to be driven by the defendant, coming towards him in the opposite lane of traffic driving northbound. The car flashed its high beams at him twice.
>
> [] Silvia testified that there are two different lamp settings in a vehicle—the regular driving lamps and high beams.
>
> [] Silvia's attention was drawn to the oncoming car flashing its high beams at him. The high beams were bright and obscured his vision.
>
> [] Silvia testified that he considered the driver's actions dangerous because there is no shoulder on Fostoria Road. He stated that there is

foot traffic and bicyclists on this road, and that a blinded driver could accidently hit someone. Silvia also testified that, in general, there are road rage incidents related to flashing lights.

[] Silvia testified that his observation of the oncoming vehicle flashing its high beams at him within 500 feet was a violation under the Texas Transportation Code 547.333. Silvia also testified, although there are instances when motorists flash their high beams to signal other drivers or relay a message, that it is still considered a violation under the Texas Transportation Code.

[] Silvia testified that he routinely conducts crash investigations and is familiar with distance measurements on roads. Based on his training and experience, Silvia estimated that the oncoming vehicle that flashed its high beams was within 100 feet of Silvia's vehicle.

[] Based on the observed traffic violation, Silvia turned around to initiate a traffic stop with the intent of issuing a warning to the driver.
. . .
[] Silvia testified, based on the two Texas Transportation Code violations he observed, that he initiated a traffic stop on the vehicle with the intent of issuing warnings for flashing high beams and possessing an obscured license plate.

[] Texas Transportation Code section 547.333(c) requires that: "A person who operates a vehicle on a roadway or shoulder shall select a distribution of light or composite beam that is aimed and emits light sufficient to reveal a person or vehicle at a safe distance ahead of the vehicle, except that: (1) an operator approaching an oncoming vehicle within 500 feet shall select: (A) the lowermost distribution of light or composite beam, regardless of road contour or condition of loading; or (B) a distribution aimed so that no part of the high-intensity portion of the lamp projects into the eyes of an approaching vehicle operator.

The trial court's conclusion of law was that "[t]he defendant's detention was supported by reasonable suspicion[]" under the Fourth Amendment. *See* U.S. Const. amend. IV. Burney appealed.

5

## Issues on Appeal

In his first issue, Burney argues that the trial court erred in denying Burney's motion to suppress because he was unconstitutionally seized based on his momentarily flashing of his high-beams or "brights" which is not illegal and Trooper Silvia's misunderstanding of the law cannot establish a particularized suspicion justifying the stop. In his second issue, Burney argues that the trial court erred in denying Burney's motion to suppress because he was unconstitutionally seized based on Trooper Silvia's belief that his license plate was obscured more than one half of the "X" in "Texas" which is prohibited by section 504.945(a)(7)(B) of the Texas Transportation Code, and Trooper Silvia's misunderstanding of the law cannot establish particularized suspicion justifying the stop.

## Standard of Review and Applicable Law

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or disbelieve all or part of a witness's testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.

6

Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). In conducting our review, "[w]e afford almost total deference to the trial court's findings of historical facts that are reasonably supported by the record and to its resolution of mixed questions that turn on credibility or demeanor[.]" *Lopez*, 610 S.W.3d at 494. "We review de novo a trial court's legal conclusions and its resolution of mixed questions that do not turn on credibility or demeanor." *Id.* When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We reverse the trial court's ruling on a motion to suppress only if it is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citing *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *Story*, 445 S.W.3d at 732). We must review the trial court's ruling in the light of what was before the court at the time the ruling was made. *Weatherred v. State*, 35 S.W.3d 304, 311 (Tex.

App.—Beaumont 2001, pet. ref'd). Therefore, our review of the relevant evidence is confined solely to that elicited during the suppression hearing. *Id.* Statutory construction is a question of law that we review de novo. *Mehaffey v. State*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010).

A warrantless traffic stop is analogous to a temporary detention, and it may be justified when the Trooper has "reasonable suspicion." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022) (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). Generally, a stop is reasonable when a police officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). We examine the reasonableness of a temporary detention in light of the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417 (1981) (explaining "the totality of the circumstances—the whole picture—must be taken into account[]" when determining whether reasonable cause for a traffic stop exists); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Reasonable suspicion requires more than a hunch, and it exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity. *Hardin*, 664 S.W.3d at 872 (citing *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007)); *Delafuente v. State*, 414 S.W.3d 173,

177 (Tex. Crim. App. 2013). For reasonable suspicion to exist, it is not necessary that an actual violation has occurred; all that is necessary is that the officer reasonably believed that a violation was in progress. *Shirley v. State*, No. PD-0239-22, 2023 Tex. Crim. App. Unpub. LEXIS 369, at *17 (Tex. Crim. App. Aug. 23, 2023); *Tex. Dep't of Pub. Safety v. Hargroder*, No. 09-21-00070-CV, 2021 Tex. App. LEXIS 7068, at *11 (Tex. App.—Beaumont Aug. 26, 2021, no pet.) (citing *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd)); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.).

> The standard for determining whether reasonable suspicion exists for a temporary investigative detention is quite low. It is lower than the probable cause standard and applies only to those brief detentions which fall short of being full scale searches and seizures. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts.

*Shirley*, 2023 Tex. Crim. App. Unpub. LEXIS 369, at *16 (footnotes omitted). In determining whether an officer's suspicion was reasonable, we employ an objective standard: whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See id.* at **16-17; *Hargroder*, 2021 Tex. App. LEXIS 7068, at *11

(citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex. App.— Austin 1998, pet. ref'd)). "A mistake about a statute's application can be objectively reasonable when the statute's application is unclear and the statute has not previously been definitely construed by a court." *Shirley*, 2023 Tex. Crim. App. Unpub. LEXIS 369, at **17-18 (citing *Heien v. N. Carolina*, 574 U.S. 54, 67-68 (2014)).

Section 547.333(c)(1) of the Texas Transportation Code states

(c) [a] person who operates a vehicle on a roadway or shoulder shall select a distribution of light or composite beam that is aimed and emits light sufficient to reveal a person or vehicle at a safe distance ahead of the vehicle, except that:
> (1) an operator approaching an oncoming vehicle within 500 feet shall select:
>> (A) the lowermost distribution of light or composite beam, regardless of road contour or condition of loading; or
>> (B) a distribution aimed so that no part of the high-intensity portion of the lamp projects into the eyes of an approaching vehicle operator[.]

Tex. Transp. Code Ann. § 547.333(c)(1).

## Analysis

In his first issue, Burney argues that the trial court erred in denying Burney's motion to suppress because he was unconstitutionally seized based on the "momentarily flashing of his high-beams" or "brights" which he argues is not illegal and Trooper Silvia's misunderstanding of the law cannot establish a particularized suspicion justifying the stop. According to Burney, Trooper Silvia's belief that

10

Burney had violated section 547.333(c)(1) of the Texas Transportation Code was incorrect because the Legislature did not intend the word "select" in the statute to be a blanket prohibition against momentarily flashing of high beams or "brights" when signaling approaching vehicles to dim their own high-beams or "brights." Burney argues that Trooper Silvia misunderstood the law, and therefore the Trooper did not have particularized or reasonable suspicion to stop Burney. Burney also argues that because Trooper Silvia's continuous selection of this high-beams or "brights" obstructed Burney's view, Burney's "selection" of his high-beams or "brights" was justified. Burney contends that even if the flashing of his high-beams or "brights" violated section 547.333(c)(1), Trooper Silvia's seizure of him violated the Fourth Amendment because Silvia "manufactured the violation through his own actions making his seizure unreasonable." Burney also argues that his momentary flashing of high beams to signal Trooper Silvia was protected First Amendment speech because here Burney was warning Trooper Silvia that Silvia's "continuous use of high beam lights was obstructing [Burney's] view" as Trooper Silvia's patrol car was "approach[ing] within 100 feet on the two-lane roadway." On appeal, Burney does not argue that he was not within 500 feet when he flashed his high beams at Trooper Silvia's vehicle, nor does Burney argue that the flashing of his vehicle's high beams did not obstruct Trooper Silvia's view.

The State argues that the trial court did not err in denying the motion to suppress because the plain language of section 547.333 prohibits a driver from flashing his high beams at an oncoming vehicle within 500 feet if it obstructs the other driver's vision. According to the State, the trial court found Trooper Silvia's testimony credible regarding the Trooper's belief that Burney violated section 547.333, and even if Trooper Silvia had misinterpreted the statute, it would still constitute reasonable suspicion. As for Burney's First Amendment claim, the State argues that there is no credible evidence that Burney's flashing of his brights was expressive conduct, and section 547.333 is a content-neutral regulation that passes intermediate scrutiny.

We first address Burney's arguments pertaining to section 547.333. When construing statutes, our primary goal is to ascertain and give effect to the legislature's intent. *See* Tex. Gov't Code Ann. § 312.005; *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In doing so, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Watkins v. State*, 619 S.W.3d 265, 271-72 (Tex. Crim. App. 2021). In interpreting the text of the statute, we must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *State v. Rosenbaum*, 818 S.W.2d 398, 400-01 (Tex. Crim. App. 1991)

12

(citing Tex. Gov't Code Ann. §§ 311.025(b), 311.026(a)); *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). When a particular term has not been legislatively defined, we construe that term according to common usage. *Watkins*, 619 S.W.3d at 272. We may consult standard or legal dictionaries to determine the meaning of undefined terms. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2001); *Ex parte Rieck*, 144 S.W.3d 510, 512-13 (Tex. Crim. App. 2004).

Section 547.333 contains no definition of the word "select." We note that the general definition of the word does not contain a temporal element. *See* Webster's Third New Int'l Dictionary, 2058 (2002) ("select" means "chosen from a member or group by fitness or preference"). Burney cites to *Chubb v. State*, 821 S.W.2d 298, 300 (Tex. App.—Corpus Christi 1991, pet. ref'd) and other cases[2] in support of his argument that law enforcement commonly utilizes the flashing of high beams to signal drivers. Although the facts in *Chubb* and the other cases Burney cites involve an officer flashing a patrol vehicle's high beams at another vehicle, nothing in those opinions stands for the proposition that the act of flashing "brights" or "high beams" does not violate section 547.333(c)(1). *See also McCurtain v. State*, No. 05-15-00959-CR, 2016 Tex. App. LEXIS 7544, at *4 (Tex. App.—Dallas July 14, 2016,

---

[2] *Guitierrez v. State*, 422 S.W.2d 467, 468 (Tex. Crim. App. 1968); *Jezek v. State*, No. 03-09-00575-CR, 2010 Tex. App. LEXIS 7234, at *3 (Tex. App.—Austin Aug. 31, 2010, no pet.) (mem. op., not designated for publication); *State v . McCray*, 986 S.W.2d 259, 260 (Tex. App.—Texarkana 1998, pet. ref'd).

no pet.) (mem. op., not designated for publication) (*Chubb* and other cases may mention facts of a vehicle's high beams being flashed at another car but the cases do not stand for the proposition that the action of flashing high beams is not a violation of section 547.333). Burney has not cited a definition or case that provides that the term "select," as used in section 547.333 is limited to the permanent selection of high beams. The trial court found that Trooper Silvia testified that: he was driving southbound and observed the vehicle driven by Burney coming towards Silvia in the opposite lane of traffic driving northbound; the car flashed its high beams at him twice; based on his training and experience the oncoming vehicle that flashed its high beams was within 100 feet of Silvia's vehicle; his observation of the oncoming vehicle flashing its high beams at him within 500 feet was a violation under section 547.333 of the Texas Transportation Code; based on the observed traffic violation Trooper Silvia turned around to initiate a traffic stop with the intent of issuing a warning to Burney; and that although there are instances when motorists flash their high beams to signal other drivers or relay a message, it is still considered a violation under the Texas Transportation Code.

We need not decide whether Burney's momentary flashing of his high beams constituted an actual violation of section 547.333 because we conclude the trial court did not err in finding that Trooper Silvia's belief that Burney's conduct violated section 547.333(c)(1) of the Texas Transportation Code was reasonable. *See Heien*,

14

574 U.S. at 65-67 (A traffic stop based on an officer's mistaken understanding of the law of the offense, so long as that mistake was objectively reasonable, is valid.); *McCurtain*, 2016 Tex. App. LEXIS 7544, at **4-5 (appellate court did not need to determine whether section 547.333 requires a vehicle's high beams to be permanently or continuously selected to constitute a violation of section 547.333(c)(2) because the appellate court concluded that the officer's belief that appellant's conduct violated the statute was reasonable) (citing *Heien*, 574 U.S. at 65-67).

We next address Burney's arguments that (1) his flashing of his high beams was somehow legal or justified because it was in response to Trooper Silvia's alleged use of high beams towards Burney's direction and his argument that it was protected speech under the First Amendment; and (2) his argument that even if Burney's flashing of his high beams was illegal, Trooper Silvia manufactured or invited the violation by using his brights to get Burney to respond by flashing his brights. Burney's appellate brief makes these arguments and cites to purported evidence in support of his allegation that he flashed his "brights" in response to Trooper Silvia's brights being selected. Defense counsel also argued during the suppression hearing that Burney flashed his high beams at Trooper Silvia because Trooper Silvia's patrol car's high beams were blinding Burney and Burney was signaling to Trooper Silvia to dim his lights. There is no evidence in the record at the time the trial court denied

the motion to suppress that Trooper Silvia's high beams were on, flashed, or selected prior to Burney's selection of and flashing of Burney's brights, and we cannot say the trial court erred in rejecting this argument at the time it denied the motion to suppress. *See Weatherred*, 35 S.W.3d at 311 (our review of the relevant evidence is confined solely to that elicited during the suppression hearing). Also, we note that the trial court did not find that Trooper Silvia engaged his vehicle's high beams prior to the traffic stop.

Based on the totality of the circumstances and in the light of what was before the trial court at the time it denied Burney's motion to suppress, we conclude that the trial court could have reasonably concluded that Trooper Silvia's initial detention of Burney was objectively reasonable, that Silvia had reasonable suspicion that Burney had violated section 547.333 of the Texas Transportation Code, and that probable cause existed to support the traffic stop. *See Heien*, 574 U.S. at 67-68; *Whren*, 517 U.S. at 810; *Cortez*, 449 U.S. at 417; *Shirley*, 2023 Tex. Crim. App. Unpub. LEXIS 369, at **16-18; *Walter*, 28 S.W.3d at 542; *Carmouche*, 10 S.W.3d at 328; *Hargroder*, 2021 Tex. App. LEXIS 7068, at *11; *Weatherred*, 35 S.W.3d at 311. The trial court's ruling denying the motion to suppress was not outside the zone of reasonable disagreement. *See Wexler*, 625 S.W.3d at 167. We overrule issue one. Accordingly, we need not address Burney's second issue. *See* Tex. R. App. P. 47.1. We affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on September 30, 2025
Opinion Delivered October 15, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.